

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0421-14

**LEO DEMORY ROBINSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

ALCALA, J., filed a concurring opinion in which MEYERS, JOHNSON, and RICHARDSON, JJ., joined.

### CONCURRING OPINION

I concur in this Court's judgment affirming the judgment of the court of appeals that upholds the conviction of Leo Demory Robinson, appellant, but I do not join the majority opinion. *See Robinson v. State*, No. 05-12-01502-CR, 2014 WL 428029, at *1 (Tex. App.—Dallas Feb. 3, 2014). In agreement with almost all of this Court's analysis, I would identically hold that the evidence is legally sufficient to affirm this conviction, that findings

of fact and conclusions of law are inapplicable to sufficiency-of-the-evidence reviews, and that the State must prove that a defendant acted knowingly or recklessly as to the duty-to-register element of the offense. Where I part ways with this Court's majority opinion is with respect to its decision not to apply a culpable mental state to the latter portion of the statute that addresses a defendant's failure to give timely notification of a change in his address. *See* TEX. CODE CRIM. PROC. art. 62.102(a), 62.055(a). The majority opinion's holding will result in this offense essentially becoming a strict-liability offense for which the penalties are severe, even in the absence of any indication from the Legislature that it intended to impose strict liability in this context. *See id.*[1]

As this Court's majority opinion accurately observes, in determining those elements to which a culpable mental state must apply, an appellate court begins its analysis by examining the statutory language in order to determine whether it expressly prescribes or dispenses with a culpable mental state. *See Aguirre v. State,* 22 S.W.3d 463, 471-72 (Tex. Crim. App. 1999). An examination of the statutory language for the sex-offender-registration statute reveals that no culpable mental state is expressly prescribed. Article 62.102 of the

---

[1]The practical consequences of this Court's decision will be that a sex offender who timely appears at a police station in a diligent effort to comply with the law—even if he sits in the police station day in and day out for twenty-four hours each day patiently waiting and begging to be registered—will be found guilty of the offense of failure to register as a sex offender if an officer refuses to register him for any reason whatsoever, whether it be valid or irrational. This is now essentially a strict-liability crime that gives defendants absolutely no defense to a charge of failure to give timely notification. As I explain more fully below, this Court's harsh interpretation will result in the imposition of criminal penalties upon individuals who lack any criminal intent as to their conduct but are penalized as a result of their status as sex offenders. This cannot be what the Legislature intended when it drafted this statute.

Code of Criminal Procedure states, "A person commits an offense if the person is required to register [as a sex offender] and fails to comply with any requirement of [the Chapter 62 sex-offender-registration program]." *See* TEX. CODE CRIM. PROC. art. 62.102(a). With respect to the pre-move notification portion of Chapter 62, Article 62.055 of the Code states, "If a person required to register under this chapter intends to change address, regardless of whether the person intends to move to another state, the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority . . . ." *Id.* art. 62.055(a). The failure-to-register statute, therefore, as applied in the particular context of a failure to comply with the pre-move notification requirements, contains two parts: (1) the requirement that a particular individual be subject to registration as a sex offender, and (2) the individual's failure to comply with the specific registration requirements by failing to report in person to the registering authority not later than the seventh day before an intended change of address. *See id.* art. 62.102(a), 62.055(a).

Next, this Court's majority opinion determines that, although no mental-state requirement is expressly included in the statutory language, it is necessary to include one under the requirements of the Texas Penal Code. *See* TEX. PENAL CODE § 6.02(b), (c); *Aguirre*, 22 S.W.3d at 470. Again, I agree. Section 6.02 of the Texas Penal Code states, "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." *See* TEX. PENAL CODE § 6.02(b). Because the sex-offender-registration statute does not

plainly dispense with any mental element, the offense requires proof of a culpable mental state of either intent, knowledge, or recklessness. *See id*. § 6.02(c); *see also id.* § 6.03 (defining culpable mental states).

Next, the majority opinion determines, and I agree, that in determining the portion or portions of a statute to which a culpable mental state attaches, a court should examine the "conduct elements" of the offense to determine whether they are nature-of-conduct, result-of-conduct, or circumstances-surrounding-conduct elements. *See McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989) (citing *Lugo-Lugo v. State*, 650 S.W.2d 72, 74 (Tex. Crim. App. 1983)). "An offense may contain any one or more of these 'conduct elements' which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is those essential 'conduct elements' to which a culpable mental state must apply." *Id.* In related contexts, this Court has similarly focused on the gravamen or "gist" of the offense to determine, for example, those elements for which a unanimous jury verdict is required. *See, e.g.*, *Young v. State*, 341 S.W.3d 417, 424 (Tex. Crim. App. 2011) (in jury-unanimity context, observing that "[o]ne looks to the gravamen or focus of the offense" to determine whether the gravamen is the result of the act, the nature of the act itself, or the circumstances surrounding that act). An offense may have multiple "gravamina." *See Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015).

Although it recognizes that *McQueen* is "authoritative in resolving the present case," as do I, this Court's majority opinion does not fully explain the significance of *McQueen*,

which does not limit a culpable mental state requirement to a single element but instead permits more than one culpable mental state in certain situations. This is the point where I part ways with the majority opinion. In *McQueen*, this Court observed that, "where otherwise innocent behavior becomes criminal because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances." *McQueen*, 781 S.W.2d at 603. In that case, the Court considered whether the statute criminalizing unauthorized use of a vehicle required proof of a culpable mental state only as to the defendant's conduct in operating the vehicle, or whether it rather additionally required proof of a culpable mental state as to the lack of the owner's effective consent. *Id*. at 601-02. Although *McQueen* is factually distinguishable from the present case because it involved a statute with an expressly prescribed mental state, and, therefore, the question in that case was "how far down the sentence" the Legislature intended for the mens rea to travel,[2] as opposed to what culpable mental state should apply in the absence of any express indication, this Court's approach in that related context was instructive. *See id*. In reaching its holding that a culpable mental state was required both as to the defendant's conduct in operating the motor vehicle and as to the lack of consent, the Court in *McQueen* reasoned that

> [w]hat makes the conduct unlawful is that it is done under certain circumstances, i.e., without the owner's permission. Therefore, the unauthorized use of a motor vehicle is a 'circumstances' type offense, and the culpable mental state of 'knowingly' must apply to those surrounding circumstances.

---

[2]*See DeLay v. State*, 443 S.W.3d 909, 924 (Tex. Crim. App. 2014) (citing *Liparota v. United States*, 471 U.S. 419, 424 n.7 (1985)).

*Id.* at 603.  *McQueen* thus stands for the propositions that (1) a culpable mental state is generally required *at least* as to any circumstances-surrounding-the-conduct element that renders otherwise lawful behavior unlawful, and (2) although an offense may be characterized as a "circumstances" type offense, proof of a culpable mental state may nevertheless be required as to more than one "conduct element" if those conduct elements combine to form the overall criminal behavior.[3]

This Court's majority opinion seeks to limit a culpable mental state only to the first portion of the failure-to-register statute, the existence of a particular individual's duty to register as a sex offender, which everyone agrees is a circumstances-surrounding-conduct element.  Under *McQueen*, this element requires proof of a culpable mental state because it is, in part, the existence of that circumstance that renders otherwise lawful conduct—moving to a new address without providing proper notification—unlawful.  *See McQueen*, 781 S.W.2d at 603.  Although I agree that a culpable mental state applies to the duty to register, unlike this Court's majority opinion, I would additionally apply a culpable mental state to the

---

[3]*See McQueen v. State*, 781 S.W.2d 600, 604 (Tex. Crim. App. 1989) (stating that "some form of culpability must apply to those 'conduct elements' which make the overall conduct criminal," and stating that unauthorized-use statute, a circumstances-type offense, encompassed "two 'conduct elements,' viz: that the defendant intentionally or knowingly operated a vehicle (nature of conduct) knowing that such operation was without the effective consent of the owner (circumstances surrounding conduct)"); *see also DeLay*, 443 S.W.3d at 923 (Tex. Crim. App. 2014) (analyzing money laundering statute and holding that culpable mental state was required both as to the nature-of-conduct element and as to the circumstance-surrounding-conduct element because "[o]therwise, the statute would attach a mens rea to nothing more than conduct . . . that is not intrinsically blameworthy") (citing *McQueen*, 781 S.W.2d at 600, 603, 604).

second portion of the statute, the failure-to-notify element of the offense, in light of this Court's previous statements in *Young v. State* indicating that the gravamen or focus of the failure-to-register offense is the "forbidden act" of failing to comply with registration requirements. *See Young*, 341 S.W.3d at 426. I would hold that the statute's focus encompasses both the nature of the conduct in failing to register as well as the surrounding circumstances of being required to register, thereby triggering culpable-mental-state requirements as to both conduct elements. *See id.*; *see also McQueen*, 781 S.W.2d at 603.

As the following discussion of *Young v. State* shows, the duty to register, alone, cannot be what the Legislature was concerned with when it enacted this statute because one's knowledge of his duty to register is not what makes the conduct criminal. Instead, it is the failure to register when registration is required that the statute is intended to punish. The suggestion that the gravamen or focus of the offense is simply the duty to register clearly misunderstands the Legislature's intent in drafting a statute that punishes sex offenders for failure to verify their addresses with police departments. Citing to *Young*, this Court's majority opinion determines, and I agree, that a gravamen of the offense is the duty to register and that the offense is a circumstances-surrounding-conduct offense, which is one that "prohibit[s] otherwise innocent behavior that becomes criminal only under specific circumstances." *See Young*, 341 S.W.3d at 423, 427 ("Because Article 62.055 punishes what would otherwise be innocent behavior—moving to a new address [without giving proper notification]—under the circumstances that the person is a registered sex offender, we

conclude that the statute creates a 'circumstances surrounding the conduct' offense."). I agree with this characterization of this portion of *Young*, but I believe that this is too narrow a view of what *Young* actually determined is the gravamen of this offense. In *Young*, the defendant, a registered sex offender, moved to a new residence but failed to notify authorities of his move as required by statute. *Id*. at 419; *see also* TEX. CODE CRIM. PROC. art. 62.055(a). He was charged by a two-paragraph indictment alleging that he (1) failed to notify law enforcement seven days prior to his move, or (2) failed to provide proper notice within seven days after his move. *Young*, 341 S.W.3d at 419. The jury instructions at Young's trial permitted the jury to convict him if it unanimously found that he had failed to report his change of address, but it did not require unanimity as to whether he did so either before or after his move. *Id*. On discretionary review, Young complained that the jury should have been required to unanimously agree upon whether he failed to register either before or after his move, but this Court rejected his complaint. *Id.* at 420. This Court stated,

> To address appellant's argument, *we look to the gravamen or focus of the offense* created by Article 62.055(a). *The forbidden act is failing to inform law enforcement about an impending or completed change of residence.* The primary purpose of creating and maintaining a sex-offender registry is to give local law enforcement officers a means of monitoring sex offenders who are living within their jurisdiction in order to better thwart repeat offenses. Knowing where a sex offender lives is arguably the simplest and best way to monitor him. By failing to report where he is residing, the sex offender is subverting the objective of the registry. The community and law enforcement want to know where the sex offender lives so they may take proper precautions.

*Id.* at 426 (emphasis added).

Rather than limiting the gravamen of the offense merely to the duty to register, this passage from *Young* signals the Court's understanding that the gravamen of the failure-to-register offense extends to a defendant's "forbidden act" of failing to comply with the registration requirements, which is a nature-of-conduct element of the offense. *See id.* Concluding that "[t]he focus of the [failure-to-register] statute is on giving notification to law enforcement and not the means by which a sex offender failed to do so," this Court described the gravamen of the offense as also encompassing a nature-of-conduct element. *Id.* at 427. It concluded that jury unanimity was required as to Young's failure to register, but not as to whether that failure had occurred before or after his move. *See id.* at 427-28.

Reading them in conjunction, this Court's statements in *Young* suggest that it is the combined force of the circumstance of being required to register and the failure to comply with one's registration obligations that form the overall behavior that the Legislature has sought to punish. *See id.* at 426-28; *see also McQueen*, 781 S.W.2d at 604. The Court in *Young* placed great emphasis on the statute's primary purpose of monitoring sex offenders as a means of thwarting repeat offenses, and it observed that, by failing to comply with the pre-move notification requirements, an offender "is subverting the objective" of the registry. *Young*, 341 S.W.3d at 426. This language shows that the nature-of-conduct element in failing to register is equally important as the circumstance of being required to register because it is only the combination of those elements that subverts the Legislature's objective in monitoring sex offenders and preventing sex crimes. *See id.*

In support of this conclusion, I note further that, unlike pure "circumstances" type offenses, the mere existence of the circumstance in this case—being required to register—does not, taken on its own, turn the otherwise innocent conduct of changing one's address into a criminal offense. After all, a sex offender who moves does not commit an offense unless he also fails to do something that the law requires of him, namely, providing the required notification to the authorities. Rather, as this Court suggested in *Young*, it is only the combination of the duty to register plus the failure to comply that turns the act of moving into a criminal offense. *See id*. In this sense, the failure-to-register offense is distinguishable from the purely circumstances-type offenses that were at issue in *DeLay v. State* and *McQueen* because, in those situations, the inherently innocuous conduct was rendered criminal solely by virtue of the existence of some circumstance. *See DeLay v. State*, 443 S.W.3d 909, 924 (Tex. Crim. App. 2014) (otherwise lawful conduct of engaging in financial transactions would be rendered unlawful solely by circumstance that transactions involved proceeds of criminal activity); *McQueen*, 781 S.W.2d at 603-04 (conduct at issue—driving a car—would turn into criminal conduct solely by virtue of lack of owner's consent).

*McQueen* indicates that, for a "circumstances" type offense, a culpable mental state is *at least* required as to the circumstance that renders otherwise innocent conduct unlawful; *McQueen* does not, however, suggest that a culpable mental state is required *only* as to that circumstance. *See McQueen*, 781 S.W.2d at 603. I conclude that, in accordance with

*McQueen,* offenses may have multiple "essential conduct elements" that trigger culpable-mental-state requirements if those conduct elements make up the overall behavior that the Legislature sought to punish. *See id.* at 603.

I am unpersuaded that the offense of failure to stop and render aid is instructive because there the knowledge of the accident and a victim were the gravamen that created the circumstances-surrounding-the-conduct offense. *See* TEX. TRANSP. CODE § 550.021; *Huffman v. State*, 267 S.W.3d 902, 908 (Tex. Crim. App. 2008). At a minimum, knowledge of an accident alone creates a burden on the drivers to stop to exchange insurance information. In contrast, knowing about a duty to register as a sex offender, alone, shows only that a defendant knew he was supposed to register, but that does not create any offense. It is only the additional failure to register as required that creates the criminal penalty.

Having determined that the failure-to-register offense is properly understood as having two equally important gravamina—the existence of the duty to register, which is the circumstances-surrounding-the-conduct portion of the offense, and the failure to do so, which is the nature-of-conduct portion of the offense—I conclude that a culpable mental state must apply to both of those elements. *See McQueen*, 781 S.W.2d at 604. Specifically, a mens rea of knowing or reckless must attach to a defendant's duty to comply with sex-offender-registration requirements, and a mens rea of intentional or knowing must attach to his failure to provide notification of a change of address. *See* TEX. PENAL CODE §§ 6.02(c) (if statute does not prescribe culpable mental state but one is nevertheless required under Penal Code

Section 6.02(b), intent, knowledge, or recklessness suffices to establish criminal responsibility); 6.03(b), (c) (providing that a person may act "knowingly" or "recklessly" with respect to the "circumstances surrounding his conduct"); 6.03(a), (b) (explaining that person may act "intentionally" or "knowingly" with respect to the "nature of his conduct").[4] Like the First Court of Appeals, therefore, I agree that the test should be whether a "rational jury could have found beyond a reasonable doubt that [a defendant] had notice of the new registration location and that he intentionally and knowingly failed to verify his registration information[.]" *Harris v. State*, 364 S.W.3d 328, 335-36 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that evidence was legally sufficient under that standard).

As to the merits of appellant's sufficiency-of-the-evidence challenge, I would uphold appellant's conviction, even under my interpretation of the statute that includes a culpable mental state as to the failure-to-register element of the offense. As the court of appeals discussed, there is ample evidence from which a hypothetical rational fact finder could conclude that appellant's failure to provide the proper pre-move notification was intentional or knowing. A rational fact finder could have reasonably disregarded appellant's contentions that the police department refused to accept his notification of a change of address in light of the conflicting evidence from Detective Benson, who denied appellant's claims. Viewing

---

[4]Though not pertinent to the issue here, I note for purposes of clarity that I also conclude that, because the means by which a sex offender failed to provide notice about his change of address is not the gravamen of the offense, the State need not prove a culpable mental state as to the particular means by which the failure occurred, namely, the lack of in-person notification seven days prior to a defendant's change of address, or the lack of notice of his new address seven days after changing his address. *See* TEX. CODE CRIM. PROC. art. 62.102(a), 62.055.

the evidence in a light most favorable to the trial court's judgment, appellant had moved from his aunt's residence as early as February 2010 based on the evidence that Detective Benson's February 27 visit to appellant's aunt's residence revealed that appellant no longer lived there. According to parole officer Phillips's testimony, appellant told Phillips that he intended to move from his aunt's residence on March 19, and Phillips sent a fax to the Glenn Heights Police Department on April 23 to notify them of appellant's intent to move. This evidence is sufficient to show that on or about May 7, 2010, appellant intentionally or knowingly failed to report in person an intended change of address to the Glenn Heights Police Department not later than the seventh day before he changed his address, and that he had knowledge of his obligation to provide such notice under Chapter 62.

The goal of the sex-offender-registration statute is to allow the public to know where sex offenders reside in order to better ensure society's safety while permitting the person to reenter society. Rather than effectuate this goal, this Court's majority opinion thwarts that purpose by interpreting the registration statute as criminalizing every registration failure, even if the failure was due to police malfeasance, neglect, or oversight, and even if the defendant diligently made every possible effort to comply with the law. Because the majority opinion effectively makes the failure-to-register offense a strict-liability crime that will lead to the imposition of criminal penalties upon sex offenders who lack any criminal intent as to their conduct in failing to register, I do not join the majority opinion. I, therefore, respectfully concur in this Court's judgment.

Filed: July 1, 2015

Publish