**AFFIRM; and Opinion Filed November 7, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01384-CR

**RODNEY JOE CLARK, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-82801-2015**

# MEMORANDUM OPINION

Before Justices Stoddart, Whitehill, and Boatright
Opinion by Justice Boatright

Rodney Clark was charged with the offense of failure to comply with sex-offender registration requirements by not reporting a change of address within seven days. Following a bench trial, the trial court found him guilty as charged and assessed punishment of two years' imprisonment. On appeal, Clark argues that the evidence is insufficient to show that he voluntarily registered the wrong address or recklessly failed to comply with registration requirements. We affirm the trial court's judgment.

### BACKGROUND

Clark's 2006 conviction for indecency with a child mandated that he register as a sex offender for ten years. Clark was required to register with the local law enforcement authority where he resided, register any change of address within seven days, and personally appear on an

annual basis to verify his registration information. In 2008, Clark was convicted in Grayson County for failing to register as a sex offender, and he was sentenced to twenty-two months in a state jail facility. In January 2015, Clark was convicted for failing to register with the McKinney Police Department, and he was sentenced to twelve months in the state jail division of the Texas Department of Criminal Justice. Clark was released from TDCJ on June 17, 2015, and on July 13, 2015, he appeared at the Collin County Sheriff's Office to update his sex offender registration.

Clark met with Renee Winkler, the criminal investigations division secretary for the Collin County Sheriff's Office, who assisted him in filling out the form. Winkler testified that she explained the registration requirements and the update form to Clark to make sure he understood the importance of providing accurate information. Clark provided a residence address of 5701 Shady Hill Circle, Princeton, Texas. He listed his employer as Capps and Sons and provided his employer's address and telephone number. He also listed telephone numbers for his aunt and his son. Clark initialed and signed the form where designated, acknowledging his understanding that he would have to update his registration information in the event of a move or other change. Winkler advised Clark that there could be a home visit to verify the information he provided.

Deputy Candace Herron, a criminal investigator for the Collin County Sheriff's Office, testified that on August 7, 2015, she drove to the address on Clark's registration form to verify that he was living at that address. She was unable to locate a house with that address. She spoke to several people in the neighborhood, and no one was familiar with that address. She called the telephone number that was listed on the verification packet for Clark's aunt, but it was no longer a working number. She stated that she documented her inability to verify Clark's information on the sex offender verification log.

When Winkler learned that Herron was unable to verify Clark's information, she called the number that Clark had listed as his work telephone number. Her call was directed to a recording

stating that the number was not accepting calls. She then tried to call the telephone number listed for Clark's aunt, but it was not a working number. Winkler testified that she repeated her telephone calls several days later, but she was unable to reach Clark or his aunt.

Detective Mike Vance, a property investigator for the Collin County Sheriff's Office, testified that he was asked to prepare a warrant for Clark's arrest for failing to report an address change. Before preparing the warrant, Vance tried to locate 5701 Shady Hill Circle, but he could not find a house. That address was a vacant lot.

On September 22, 2015, Clark arrived at the Sheriff's Office for the mandatory annual verification of his sex offender registration and was promptly arrested. He was indicted for the offense of failure to comply with sex offender registration requirements by intentionally, knowingly, and recklessly failing to report a change in address within seven days. He waived his right to a jury, elected a bench trial, and pled not guilty. The trial court found him guilty and assessed a punishment of two years' imprisonment. Clark's motion for new trial was overruled by operation of law, and he filed this appeal.

## DISCUSSION

### A. Culpable Mental State

In his appellate brief, Clark prefaces the argument on his issues with a discussion of the culpable mental state applicable to the offense of failure to register. A person commits the offense of failure to comply with sex-offender registration requirements "if the person is required to register and fails to comply with any requirement of this chapter." TEX. CODE CRIM. PROC. ANN. art. 62.102(a). "If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." TEX. PENAL CODE ANN. § 6.02(b). Because article 62.102(a) does not contain a culpable mental state and does not clearly dispense with one, section 6.02(c) requires that article 62.102(a)

be read to require intent, knowledge, or recklessness to establish criminal responsibility. *Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015). However, the Texas Court of Criminal Appeals has determined that the offense of failure to comply with the requirements of registering as a sex offender is a "circumstances of conduct" type of offense. *Id*. at 170–71. "The 'circumstance' at issue is the duty to register and the culpable mental state of 'knowledge and recklessness' applies only to the duty-to-register element, rather than the failure-to-comply element." *Febus v. State*, 542 S.W.3d 568, 573 (Tex. Crim. App. 2018). Accordingly, the State was not required to prove an additional culpable mental state regarding Clark's failure to register beyond establishing his awareness of the registration requirements. *Id*.

Clark urges this Court to adopt the reasoning of the dissent in *Febus* and ascribe a culpable mental state to both the duty to register and the failure to register. *Id*. at 581. He contends this would enable him to prove mistake of fact with respect to his registration. However, the majority opinion in *Febus* is binding on this Court. We decline Clark's suggestion that we apply the reasoning of the dissent.

### B. Voluntary Registration of Wrong Address

In his first issue, Clark asserts that the evidence is insufficient to show that he voluntarily registered the wrong address. Clark testified that he was living in a house that his aunt was in the process of purchasing. His aunt gave him a piece of paper on which she had written the address of the house, her phone number, and the phone number for his employer, Capps and Sons. Clark testified that the house address appeared to be 5701 Shady Hill Circle, Princeton, Texas. He referred to that paper when filling out his sex offender update form at the Sheriff's Office. Although the police later determined that the correct address of the house where Clark was staying was 5901 Shady Hill Circle, Clark testified that he did not know that he was mistaken about the actual street address until after he was arrested.

Clark argues the evidence is insufficient to show that he voluntarily provided authorities with the wrong address. He directs us to section 6.01(a) of the Penal Code which provides that "a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." TEX. PENAL CODE § 6.01(a). And he reasons that if he did not voluntarily fail to comply with registration requirements, he did not commit an offense.

Clark cites two cases, *Robinson* and *Febus*, in which the Court of Criminal Appeals discussed whether a sex offender's failure to register was voluntary. In *Robinson*, the defendant testified that he attempted to comply with registration requirements but was prevented from doing so by authorities. 466 S.W.3d at 169. Robinson argued that because there was evidence that he had attempted to give the required notice, the evidence was legally insufficient to show that his failure to give such notice was intentional, knowing, or reckless. The Court explained that the registration statute required that Robinson (1) knew or was reckless about whether he had a duty to register, and (2) failed to report in person to the local law enforcement authority his intent to change his address. *Id*. at 173. The Court noted that the culpable mental state of intent only applied to Robinson's duty to register, and Robinson had testified that he was aware of his duty to register. *Id*. The Court also found that the evidence was sufficient to conclude that Robinson failed to provide the proper pre-move notification of a change of address. *Id*. at 173–74. In a concurring opinion, Presiding Judge Keller observed that "[i]f authorities rebuff a sex-offender's repeated attempts to register, the sex offender may be able to claim an exemption from or defense to criminal liability on the basis that his failure to act was involuntary." *Id*. at 174. However, reasoning that the sex offender who is rebuffed by authorities still knows that he is failing to register, Presiding Justice Keller concluded that it was not a solution to apply a culpable mental state to the failure-to-comply element.

In the *Febus* case, the Court found the reasoning in the *Robinson* concurrence to be persuasive, and it expanded this analysis to consider the circumstances when a defendant's failure to comply with registration requirements could be involuntary. 542 S.W.3d at 573. Specifically, the Court examined whether the action of the sex offender defendant in registering the wrong address could be considered "voluntary" if such action was the "non-volitional result of someone else's act." *Id*. at 574. Defendant Febus met with a registration officer to fill out a sex offender update form. *Id*. at 570. Febus gave the officer his new address, and this address was listed on the update form. *Id*. However, a compliance check revealed that he did not live at the address. *Id*. Febus claimed that he was not guilty of failing to comply with his duty to register because someone else—the registration officer—entered the wrong address into the sex offender database. *Id*. at 574. He argued that the failure to register was a clerical error by law enforcement and was not an intentional act by him. *Id*. at 571. The Court noted that Febus had been on supervision for six years and was familiar with the registration process and the paperwork. *Id*. at 574. It also noted that Febus signed three different documents that listed the incorrect address. Based on these facts, the Court concluded that a rational jury could have found that Febus voluntarily gave the registering officer the wrong address. *Id*. at 574–75.

In this case, unlike *Robinson* and *Febus*, Clark does not accuse the Collin County Sheriff's office of (i) preventing him from registering, or (ii) entering the wrong address on his update form. There was no miscommunication between Clark and Winkler—Clark readily admits that he gave Winkler an incorrect address. The record does not indicate whether Clark made a mistake in copying down what his aunt wrote on the paper she gave him or if his aunt accidentally gave him the wrong address. However, the record includes photographs of the house where Clark lived and the numerical portion of the address—5901—is clearly visible on the front of the residence in two different places. When asked about the numbers on the front of the residence, Clark claimed that

he usually entered the house through the back door. He conceded that he had to pass by the front of the house to get to the back door. He also admitted that he had gone in and out of the front door on occasion. Clark lived at the residence for over two months, with the address numbers clearly posted on the front of the residence, and yet he never attempted to update or correct his registration.

In determining whether there is legally sufficient evidence to support Clark's conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We defer to the trier of fact to "fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). We conclude that a rational fact finder could have found that Clark voluntarily registered the wrong address. We overrule Clark's first issue.

## C. Reckless Registration of Wrong Address

In his second issue, Clark challenges the sufficiency of the evidence to prove he recklessly failed to register his change of address by mistakenly registering the wrong address. According to the indictment, Clark was charged with "intentionally, knowingly, and recklessly [failing] to report a change in address within 7 days as required by the Texas Code of Criminal Procedure, Article 62.051." Article 62.051(f) required that Clark register with the appropriate local law enforcement authority within seven days of being released from TDCJ. TEX. CODE CRIM. PROC. ANN. art. 62.051(f). Subsection (g) required Clark to ensure that his registration form was complete and accurate with respect to each item of information required by the form. *Id*., art. 62.051(g).

As previously addressed, the culpable mental state of recklessness applies only to the duty-to-register element. *Robinson*, 466 S.W.3d at 172. The record establishes Clark's awareness and understanding of the registration requirements. When he met with Winkler to update his

registration form, he had just completed a state jail sentence for failing to comply with registration requirements. He clearly understood the consequences of not complying with the registration requirements. He knew that he had to update his registration because he had a new address. He also knew that he had to appear for the annual verification of his sex-offender registration within thirty days of his birthday. Clark testified that he understood what he was required to do and was trying to do it correctly.

Observing that the burden was on Clark to make sure the information on his registration form was accurate, the trial court found Clark guilty of failure to comply with sex-offender registration requirements. Viewing all of the evidence in the light most favorable to the verdict, and deferring "to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts," we conclude the trial court could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. We overrule Clark's second issue.

## CONCLUSION

Having overruled both of Clark's issues, we affirm the judgment of the trial court.

/Jason Boatright/
JASON BOATRIGHT
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

171384F.U05

–8–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RODNEY JOE CLARK, Appellant

No. 05-17-01384-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 416-82801-2015.
Opinion delivered by Justice Boatright.
Justices Stoddart and Whitehill
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 7th day of November, 2018.