

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00585-CR

Doug **CORONADO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. CRW2107139
Honorable Russell Wilson, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: October 25, 2023

AFFIRMED

Coronado challenges his conviction for possession of methamphetamines based on an *affirmative links* argument. He claims that the evidence connecting him to methamphetamine drugs found in his proximity could be reasonably explained and therefore did not support an inference of possession. For the reasons stated below, we affirm.

### BACKGROUND

Coronado was arrested for possession of methamphetamine after an officer discovered a baggie of the contraband in a garbage can next to him. The officer was alerted to Coronado's

possible drug use after a witness called the police about a man and a woman possibly taking drugs next to the Texas Star Lodges parking lot in Floresville. She said they were sitting near an older Chevy truck.

The responding officer, Officer Megan Anderson, drove from the police station to the nearby Texas Star Lodges parking lot. It was around 12:30 in the afternoon. There, she saw Coronado and a woman sitting on a picnic bench just outside the gates, next to an old blue truck. As Officer Anderson parked and walked up to them, she saw Coronado throw something into the garbage can next to him. Officer Anderson asked the pair what they were doing, and one of them replied that they were smoking cigarettes. Officer Anderson asked what Coronado threw away, and he answered that it was a cigarette butt, even though there was a small pot for cigarette butts on the picnic table. Coronado was smoking a cigarette as he spoke. Officer Anderson suspected that the discarded item was contraband. She looked in the garbage can and discovered a small baggie of methamphetamine.[1] There was nothing else in the garbage, which she mentioned to Coronado. She picked up the baggie and asked, "Did you throw this away?" Coronado replied, "Yes." She asked, "Is this meth?" He replied, "Yes." Officer Anderson placed him under arrest and collected the baggie of methamphetamines for evidence.

As Officer Anderson was taking Coronado into custody, two women walked up. One of them was carrying Coronado's shoes, and she gave them to him. Officer Anderson took some money out of Coronado's pocket, which he allowed the woman to hold for him. The woman said, "When we opened up, we found that this morning. Isn't that the baggie we found this morning?" Coronado had not mentioned finding a baggie of meth to Officer Anderson. This exchange was documented on video by Officer Anderson's body camera.

---

[1] The officer recognized the drugs from her training and experience. Later, the drugs tested positive for methamphetamine.

At trial, Coronado's sister testified. She was the woman who was sitting with Coronado when Officer Anderson first arrived at the Texas Star Lodges. She stated Coronado both lived and worked at the Texas Star Lodges. She said that she visited her brother to borrow a pressure washer and that she was smoking cigarettes with him when Officer Anderson arrived. She denied using any illegal drugs with him. When asked if Coronado threw away a baggie of meth when Officer Anderson approached, she said she did not know what he threw away, even though she had insisted to Officer Anderson that he had merely thrown out a cigarette butt. She also stated that the woman who brought Coronado his shoes was his girlfriend at the time, and that the other woman was the property manager.

Coronado testified that he worked maintenance for Texas Star Lodges, which meant that he lived there and worked whenever they needed him. He said that on the day of his arrest, his girlfriend had told him to collect a baggie of meth that she saw on the property. He testified that it was not the first time Texas Star Lodges employees had found methamphetamines on their premises. He explained that there was a protocol for reporting and disposing of illegal drugs on the property, which included delivering the drugs to the manager who would decide whether to report them to the owner, who was reportedly ex-law enforcement.[2]

At first, Coronado testified that he had picked up the baggie of methamphetamines ten or fifteen minutes before his sister arrived, at most. He said he called the manager to report that he had discovered the baggie of methamphetamines, but that the manager was not on the property at the time, and he would have to wait for her to return.

---

[2] Officer Anderson testified that she could not recall responding to the Texas Star Lodges or any of her fellow officers responding to the lodges for reports of methamphetamines being discovered on the grounds.

When asked about throwing away the baggie of methamphetamines and telling Officer Anderson that it was a cigarette butt, Coronado admitted that he lied to her because he thought she would not believe him anyway.

When asked about his girlfriend telling Officer Anderson that they had discovered it when they opened up that morning, Coronado testified that she was referring to 11:00 in the morning when they woke for the day. But Coronado was arrested at 12:36 in the afternoon, which meant that he must have also had the baggie of methamphetamines for more than ten or fifteen minutes, even according to his own account.

The prosecutor asked Coronado whether his testimony had established his willingness to lie in the face of a potential consequence and that he was "not the most credible person in the world." Coronado agreed that it had.

The jury convicted Coronado of possession of methamphetamine drugs, and he appealed.

## STANDARD OF REVIEW

"As recognized by the Texas Court of Criminal Appeals, the 'affirmative-links analysis is not a distinct rule of legal sufficiency.'" *Boyd v. State*, No. 04-17-00193-CR, 2018 WL 3129463, at *2 (Tex. App.—San Antonio June 27, 2018, no pet.) (mem. op., not designated for publication) (quoting *Tate v. State*, 500 S.W.3d 410, 414 n.6 (Tex. Crim. App. 2016)); *accord Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Rather, an affirmative links argument calls for a legal sufficiency review of the evidence supporting a conviction for constructive drug possession.[3] *Boyd*, 2018 WL 3129463, at *2 (citing *Evans*, 202 S.W.3d at 161 n.9). "When deciding whether evidence is [legally] sufficient to support a conviction, a reviewing court must assess all the

---

[3] Coronado cites a factual sufficiency standard, but the distinction between factual and legal sufficiency in criminal cases is outdated since *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). Here, we will refer only to the legal sufficiency standard.

evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *Evans*, 202 S.W.3d at 161 (citing *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 (Tex. Crim. App. 2015)). In doing so, it must "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)

### AFFIRMATIVE LINKS

**A.     Parties' Arguments**

Coronado argues that the evidence tying him to drugs that he was seen discarding was insufficient to support his conviction for drug possession because he was merely following a workplace protocol by having them in the first place. The State argues that Coronado's testimony was not credible, and that a rational jury could have discredited it.

**B.     Law**

A defendant is guilty of possessing methamphetamines if he is found "exercising care, custody, control, or management of the substance." *See Torres v. State*, No. 07-21-00140-CR, 2021 WL 5579766, at *2 (Tex. App.—Amarillo Nov. 30, 2021, no pet.) (mem. op., not designated for publication) (citing TEX. HEALTH & SAFETY CODE ANN. §§ 481.115(a); 481.102(6); 481.002(38); TEX. PEN. CODE ANN. § 1.07(a)(39); *Poindexter*, 153 S.W.3d at 405. But if the defendant is not found in actual possession of the drugs, then the State must prove sufficient affirmative links tying the defendant to the charged contraband. *See Barbosa v. State*, 537 S.W.3d 640, 645 (Tex. App.—San Antonio 2017, no pet.) (citing *Poindexter*, 153 S.W.3d at 405).

"Affirmative links" may include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Boyd v. State*, No. 04-17-00193-CR, 2018 WL 3129463, at *3 (Tex. App.—San Antonio June 27, 2018, no pet.) (citing *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Evans v. State*, 202 S.W.3d 158, 161 n.12 (Tex. Crim. App. 2006)).  In deciding whether enough links support an inference of possession, the Texas Court of Criminal Appeals has held that it is not the number of links that is most important, but rather "the logical force of the direct and circumstantial evidence." *Id*. (citing *Evans*, 202 S.W.3d at 162).  In essence, we determine whether a jury was "rationally justified in finding guilt beyond a reasonable doubt" "based on the combined and cumulative force of the evidence and any reasonable inference therefrom." *Id*. (citing *Tate*, 400 S.W.3d at 414).

## C.    Analysis

The jury was charged with determining whether Coronado possessed methamphetamines and whether he knew that he possessed or that he intended to possess a controlled substance. *See Torres*, 2021 WL 5579766, at *2.  Officer Anderson testified that she saw Coronado discard a baggie of something and that she collected the baggie with its substance for evidence. *See Tate v. State*, 500 S.W.3d at 413 (presence and proximity).  The suspected drugs in the baggie tested positive for methamphetamines. *See Torres*, 2021 WL 5579766, at *2.  Coronado admitted to

possessing and then discarding a baggie of methamphetamines, both to Officer Anderson and to the jury at trial. *See Tate v. State*, 500 S.W.3d at 413 (consciousness of guilt). Officer Anderson did not testify to witnessing any symptoms of drug use, and Coronado did not attempt to flee. *See id*. There was no odor of contraband, and there was no evidence of paraphernalia. *See id*. There was no testimony that Coronado was carrying a large amount of cash, and there was no evidence that the garbage can where Coronado discarded the drugs was his. *See id*. But Coronado's effort to discard the drugs as Officer Anderson approached him could be described as furtive. *See id*. (furtive gestures). In fact, Coronado admitted to lying to Officer Anderson about the drugs, even though he also insisted that he was following a workplace protocol by having them on his person. *See id*. (consciousness of guilt). In general, the jury could have disbelieved Coronado's reasons for possessing the drugs at all. *See Brooks*, 323 S.W.3d at 899. It could have concluded that his admitted lie to Officer Anderson and his inconsistent testimony revealed a consciousness of guilt. *See id*.; *Tate v. State*, 500 S.W.3d at 413. The logical force of the testimony overall could have rationally justified the jury's finding of guilt beyond a reasonable doubt "based on the combined and cumulative force of the evidence and any reasonable inference therefrom." *See Tate*, 500 S.W.3d at 414; *Evans*, 202 S.W.3d at 162. Therefore, we overrule Coronado's sole issue.

## CONCLUSION

Based on this record, we conclude that the State established sufficient affirmative links tying Coronado to the methamphetamine drugs discovered in his proximity. We conclude that the evidence was legally sufficient to support Coronado's conviction for possession of them, and we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

Do Not Publish